We have four cases on for argument this morning, and in addition we have two cases submitted on the briefs. Before we get to the arguments, we do have a motion which is pending in the Conoco against energy and environmental case. That motion will be granted to the parties in that case. That is the motion for leave to file a supplemental appendix. As you go into your arguments, we would urge you to go directly to your main legal points that you want to bring to our attention. The time is limited, and we have read the briefs. We are familiar with the facts and familiar with the cases sufficiently that you should just go directly to the points you want to emphasize to us in particular. And with respect to the lighting system, if you are not familiar with it, when the yellow light goes on, that means you're beginning to consume your rebuttal time. The first case is number 05-3156, Robertson v. Treasury. Mr. Ingram. If it pleases the Court, my name is Dale Ingram. I represent the appellant, Mr. William Robertson, in this case. I'm before the Court this morning on the appeal of the MSPB decision upholding the IRS's termination of Mr. Robertson for violating 1203b-9 of the Restructuring Reform Act of 1998. More specifically, the HC charges that the appellant willfully understated his tax liability, thus mandating his termination under the statute. The appellant set forth in his brief several reasons which, in and of themselves, are sufficient to reverse the Board's decision. And they're each supported independently by law, in fact, in and of themselves. But in addition to those reasons, there's a couple of points that I touched on in the briefs that I want to expand on a little bit today. One of those is I noted in the appellant's brief that A.J. issued a preliminary decision at the pre-hearing that said that she decided that the tax court proceedings regarding the 1997-1998 tax returns was going to operate as res judicata as to the issue of understatement of taxes, and then we would proceed in the hearing simply under the issue of willfulness. At that time, I raised the objection that if it was res judicata under the first element of understatement, then it should be res judicata under claim preclusion as to the second or willfulness element. Now, I'm not sure she understood the claim preclusion argument. It seemed clearly applicable here. It was the same parties. It was the same issues. The agency had the opportunity to raise the willfulness issue by way of additional penalties, either under the fraud or the evasion penalties. That whole issue could have been and should have been litigated at the tax court, which also ties into the affirmative defense argument that… Well, that issue wasn't resolved in the tax court, correct? I mean, that was not part of the tax court proceeding as I understood it. Well, the 20 percent, they chose a 20 percent negligence penalty. Right, but that was the government's election. It wasn't a finding, correct? Well, it's my understanding… Or did the government seek more? They could have sought whatever they wanted. They could have, but there wasn't a finding from the tax court that rejecting an argument made by the government. Is that correct? That's correct. It's my understanding that claim preclusion is the opportunity to bring the claim but not doing so. Claim preclusion but not issue preclusion.  And so claim preclusion wouldn't apply. It's still res judicata. Issue preclusion. Res judicata is usually referred to as claim preclusion as opposed to issue preclusion, which is collateral estoppel. It's an important distinction. Claim preclusion is the opportunity to bring the same parties, same issues, same proceedings, operating out of the same core of operative facts. They had the chance to bring that issue before it and failed to do so, so they're precluding it from bringing it in subsequent proceedings. What's also problematic is because it denied the opportunity to have, to establish the preceding requirement of a judicial or administrative determination of willfulness. That's also required by 2038. This point was not pressed in your opening brief, was it? The claim preclusion, the issue preclusion, claim preclusion? Well, I think I noted in footnote 10 of the initial brief that I talked about the judges, and she didn't bring it up much. It wasn't decided much. That's where you explain what happened, but you don't argue. You don't make a legal argument that this was wrong. Okay. I think, why don't you move on to some of the arguments that you have pressed in your brief? But as a result of the court's, the administrative judge's response that we were only going to proceed on the willfulness issue, we didn't bring in some of the witnesses we could have. We could have brought in a preacher that gave some documents. We could have brought in some other information, but what occurred was, thereafter, was only one fact witness, the auditor. The auditor testified as to the audit, almost two-year audit that occurred. She was the lone fact witness. She was the only person that could put into evidence anything, any indication, any evidence of willful behavior, and she simply didn't. The only thing that she put in, as a matter of fact, the only probative piece of evidence that she put in was her document where she determined that the behavior was negligent. It's in the appendix, her penalty sheet, and she testified. I think it's, I know it's in the appendix. She said it was simply negligence, and that was okay. It was an accuracy-related penalty of negligence. That's all the evidence that was in before the administrative judge as to willfulness, and it was exonerating. We went forward then. I think I talked off the record, and unfortunately, the record wasn't made on this, as to whether we could proceed under a directive. I think it was sort of informally decided that we didn't want to take up that much time to establish the record, which turns out unfortunate for the appellant in this case, because the record should have been made, because they didn't put in any evidence, and what occurred thereafter was the appellant's and his witnesses, and the administrative judge simply made his inability to articulate reasons she found sufficient as proof of willfulness. Let me ask you this on the standard that B-9 establishes. It's got two clauses. It starts off willful understatement. Unless such understatement is due to reasonable cause and not to willful neglect, that would seem to suggest that willful neglect would be enough to find culpability. Is that your understanding of that language? Well, my reading of that is it's a nonsensical statement. It is confusing. Willful understatement of federal tax liability unless such understatement, which must be read, unless such willful understatement is due to reasonable cause is rather like saying I committed premeditated murder, but I had a good reason. There's no good reason for a willful understatement, so that's a nonsensical statement of the law. It can only be read by saying willful understatement of federal tax liability. Well, but another way to read it is to say that willful understatement incorporates the concept of willful neglect, and to that extent the reference to willful neglect is intended to distinguish between willful neglect, which is part of willfulness, and reasonable cause, which is not. But that's not the way the agency itself has determined that they're going to interpret that. The cumulative bulletin? Yes, the bulletin. Where they reference the voluntary, intentional violation of a known legal duty, which is a criminal. So they, which I believe the court has to accept unless it's totally an absent to the law. Well, that's a question that I wondered about. I mean, you make reference to the cumulative bulletin, and it does seem to commit them to a standard that would be the traditional willfulness leaving out any element of recklessness. Right. But what is, you don't make an argument as to the binding effect of something in the cumulative bulletin, and I'm wondering what authority you can point us to as to the binding effect of the statement. Well, there's an early statement in that. I read that again yesterday, and I'm not sure that I understand it. It may be referred as presidential. The bulletin contains a lot of different information internally and externally, but it's not really a regulation. Right. It appears to be something just short of a regulation. But for the purposes of what was before the Merit Systems Board, that's what we were all operating under. That's what the agency admitted to early on in the proceedings. That's what the judge acknowledged was a standard. That it was a pomponio standard, which is a criminal standard, which means that they had to show both elements, an understatement of tax liability, which was rendered as res judicata in an early proceeding. So the whole proceedings only went to willfulness. And again, there's not substantial evidence to prove willfulness because there was no evidence, absolutely no evidence. The sort of evidence you'd expect to approach this would be those that are in the fraud or the evasion statutes. As the bulletin stated, these are terms which the IRS are familiar with because they use them all the time in 7702, 7701, 6666, 6-2. These are the penalty statutes, and these are terms very familiar to the IRS. And so it was not a difficult term for them to use. Well, but the term willful neglect has also been used in other tax statutes. And the Supreme Court referred to that statute, that language, as meaning either a conscious, intentional failure or reckless indifference. Now, that would seem to be broader than the pomponio standard. But more particularized for our purposes, I believe, is the language of negligence, which is not willful behavior. Negligence includes, and this is 6662.C, for purposes of this section, the term negligence includes any failure to make a reasonable attempt to comply with the provisions of this title. And the term disregard includes any careless, reckless, or intentional disregard. So all reckless disregard is negligence. It is not willfulness by the statute that they're using to interpret the behavior and willfulness and negligence. Are you talking about 7201, the evasion statute? No, this is 662. This is a definition of negligence. Reckless disregard is negligence. It is not willfulness. Well, clearly that's not always true with respect to willful neglect because the Supreme Court has said that reckless indifference is willful neglect in the Boyle case. We're starting to mix criminal statutes, and these are not exact fits, to be sure. But we're looking at, and I want to reserve my time. I just want to make sure I'm on point before I step down. We still have the problem of judicial versus administrative determinations. The administrative determination is not satisfied by the MSPB processes of notice, response, and decision. I believe that when you put it in a context, 1203A, the context of judicial or administrative determination, it may vary depending upon which of the ten sins is involved. But if it's an administrative determination, it's got to be, I believe, an administrative adjudication as contemplated under 5 U.S.C. 554. What would be an example of that in this context? Well, they have these preliminary, I think I referenced that in the brief, responded to by the agency. But there's these preliminary hearings. Now, it may be something that has to be created, but I simply don't think that the regular MSPB process is sufficient. I think it contemplates in the statute an adjudication which has specific requirements under the Administrative Procedures Act. Thank you. All right. We'll hear from the government now. Thank you, Mr. Ingram. Mr. Poirier. May it please the Court. I want to start out by hopefully clarifying the record a little bit regarding the collateral estoppel issue. It is true, as I pointed out in our brief, that the administrative judge referred to collateral estoppel on the understatement issues in one of her preliminary orders. I think that was probably inaccurate. She should have referred to the admissions of the parties because the document that she was referring to was not a judicial determination. It was a settlement agreement. And so it was for that reason that I abandoned one of the five charges that the administrative judge found that was regarding charitable contributions. Because in the proceedings, in the settlement agreement, while it may be true that the charitable contributions were not properly stated and documented, during the tax proceedings, the government conceded that he came up with other charitable deductions that offset the errors. So on that basis, there's a couple of points that I wanted to highlight. The first is that even if the Pomponio standard were the appropriate standard, there are findings in the record that would support the charges. And the most obvious finding is with regard to the improper deductions for the rental properties. In that one, the board clearly states that Mr. Robertson knowingly and willfully took an improper deduction. But Mr. Poirier, is that the only finding that's made by the administrative judge? The only specific finding regarding 1998? That would satisfy the Pomponio standard, Your Honor. No, I don't think so, Your Honor. Although I think in my brief I wasn't, I think I got a little bit confused. Also with the CD interest, with regard to the CD interest, at page 22 of the Joint Appendix, there's a finding that Mr. Robertson willfully failed to report the CD interest. And in addition to that bald statement that it was willful, there are a number of subsidiary findings that I think give context to that statement. The board found that the bank records regarding the CDs and the IRAs were not confusing. That's at page 21. The board specifically found that Mr. Robertson was evasive with regard to whether he had previously reported CD interest as income. That's also at page 21. And there's a specific finding that the tax guidance, publication 17, is not confusing on this point. And that's found at pages 21 and 22. I think in my brief I identified the state tax refund issue as one where there was a clear finding of willfulness. And I think that was probably, I was thinking of the CD interest here. Now, of course, you're correct that the administrative judge does use the term willful. But that's immediately after having stated at the end of the preceding paragraph, right at the top of 22, that to the extent that an appellant can claim ignorance of law, he is responsible for acting with reckless disregard of the law. I mean, this brings into play, of course, this whole question of whether reckless disregard or willful blindness, however you want to characterize that concept, is part of willfulness as employed in this setting. And the argument made based on Pomponio is the answer to that is no. And I think it's a fair reading of Pomponio that reckless disregard won't do it. You've got to have intentional violation of a known legal duty. So if you don't know the duty, even if you've been reckless about not finding out what your duty is, you're not willful under Pomponio. Would you agree with that? I do agree with that, Your Honor. I think that's clearly the Pomponio standard. And I do think that the guidance document, the bulletin that is referenced, is a mistaken interpretation of Section 1203's standard. Now, what significance should we attach to that bulletin? I mean, that's an official IRS publication. What degree of deference is it entitled to legally? It's entitled to Meade deference for a guidance document, Your Honor. And the site for your convenience is United States versus Meade Corporation, 533 U.S., 218. And the jump site is 234 and 35. Basically, if it's not noticing comment, if the guidance document is convincing, it has whatever power that it has to persuade. You mean what's usually conventionally called the Skidmore lower than Chevron deference? Is that what the degree of deference is? Definitely lower than Chevron. And I know I've reviewed Skidmore, but I'm not sure. Well, Skidmore, I think the recent deference cases have divided the universe into two parts. You know, there's the Chevron, which is formal agency positions taken in notice and comment regulations are the equivalent, and then the agency positions taken more informally, which are entitled Skidmore. Right. You say this is Skidmore? Yes, it's definitely not Chevron. There's no notice and comment proceeding here. It would be, even if there had been notice and comment proceedings, I think it's very tricky as to whether or not the Pompano interpretation would survive even under Chevron deference because it's simply not consistent with the language of 1203. The standard in 1203 has to be read together, I think. Otherwise, it has no meaning. You can't really break it up into different parts and think of it as showing of willfulness and then a rebuttal of good cause. I don't think that's a reasonable way to read that provision. I mean, even in the brief, Mr. Robertson concedes that that doesn't really make any sense. So if it doesn't make any sense, don't you think that there should be regulations at least explaining that so that individuals would be on notice as to what it means? Well, let me say it. I'm not saying that I think the statute makes no sense. I'm saying to read the statute in segments. In other words, I think you have to read the whole phrase together. And I think if you read the whole phrase together, it does make sense. How would you read that Section 9 then to make sense out of it? I think that willful neglect or outright willfulness are the violations that are identified there. In other words, I think that the statute requires that you can't simply not look into the matter. You're expected to look into the rules when you prepare the taxes when you're an SES employee at the IRS. You don't simply guess. You look it up. And I think that's what Congress meant to require. That sounds more like a negligence statute. That's not what it says, though. Well, I think it says willful neglect. And I think you can draw a distinction. If you had some very complicated area of the law, I think that you could try and make some kind of a determination and make a mistake. And maybe you made a negligent mistake, but you could demonstrate that you acted reasonably. Or even if it wasn't reasonable, that it wasn't willful neglect. I think willful neglect is when you have a very basic provision. The whole mortgage deduction is basic. The state tax return refund as income is very basic law. But you're suggesting that with respect to simple provisions of the code that you have an obligation to look at them, but complex provisions of the code maybe not. I would submit to you that in the criminal area at least where this willful neglect or willful blindness comes up frequently, the concept applies to situations in which you have a basis for suspecting that something is the case, but you intentionally avoid confirming that that's the case as opposed to the negligence standard, which is when you just don't check even though you don't start from an assumption that something is the case. I mean, for example, if I am asked by somebody to carry a suitcase across the border and told that they'll give me $10,000 if I do it, and I decide to take the $10,000 but I'm not going to look in the suitcase because I don't want to find out what's in it, that's willful neglect or willful blindness. Not that somebody gives me something and an ordinary prudent person would look in it and I just don't happen to look in it because I'm a careless person. That's not enough. Well, I think that your articulation is much better than mine, Your Honor, and it also fits very well with the factual findings that the Board made. For example, with the state tax refund, I believe that there was a prompting from the TurboTax computer program, and then the only question was whether or not he looked into whether or not he received a refund. In other words, what you're describing, there's some reason to look at it. You're looking at the screen and TurboTax says, hey, where's your state tax refund? Did you have one? And similarly, with regard to the CD interest, the Board specifically found that Mr. Robertson was evasive with regard to whether or not he'd ever reported CD interest as income. So that would suggest that, again, a hook. Yes, you probably did know that you were supposed to report this. But wasn't some of that CD interest allegedly in the IRA? So there was an excuse there regarding the reporting of the CD interest or an alleged excuse? That was the alleged excuse, but the Board found it very unconvincing. And the reason, first of all, it didn't find Mr. Robertson credible, but on top of that, both Mr. Robertson and his expert referred to a cover letter that the bank sent later when they were asked for records. In other words, the CD slash IRA column was in a bank letter, but that was a bank letter that postdated all of his filings. So in other words, the sequence of time was just wrong for that. But that went to his credibility, though. Yes. Not to the substance. Well, there's no evidence that any records that he received had any confusing and the Board specifically found there were no confusing bank records ever sent to Mr. Robertson, at least with regard to that particular issue. If we could return again to the Pomponio issue, which really is, I think, at the core of this aspect of the case. Yes. The administrative judge starts off by saying that 1203B9 is the Pomponio standard. From what I gather, your argument is that really was a misstatement, that it's really a lower standard than Pomponio, given that I think we agree that Pomponio requires something other than willful neglect. It requires willfulness in the most narrow sense of the term. It's a very unfortunate term. It shows up in many different contexts, and it means many different things. But in the tax setting, the naked term willfulness means an intentional violation of a known legal duty. And so this statement is erroneous. Yes, I believe that's true. And I would point out that even though Mr. Robertson did claim mistake of law with regard to the CD interest and the thrift savings plan, he did not ever claim mistake of law with regard to the state tax refund. That, he claimed, was just simply an oversight, and that comes into play. Because I think under Pomponio, I think the element that's always the most difficult to prove is knowledge of the precise duty that the law requires. I mean, that's the hardest thing to prove, usually. In any event, to sum up, I guess, with the principal point that I wanted to get across was that there is the holding with regard to the rental expenses. It's very plain that the board found that he violated a known duty. He knew it, and he did it anyway. And I also think that the language, although perhaps less clear, with regard to the CD interest is also, I think, convincing that it was a knowing violation. I would just want to touch briefly on what process is required in order to find a violation. I think that the statute does contemplate that misconduct, the administrative misconduct, is the usual administrative misconduct proceedings. A notice of removal with the Title V rights associated with it in the ultimate removal decision? Right, and there was notice provided to Mr. Robertson of those rights in the notice of final removal as the statute requires. And the most convincing aspect of that, I think, is that where Congress wanted there to be some special administrative proceedings with regard to Section 1203, Congress provided for it with the special review panel. Thank you, Mr. Correa. Mr. Ingram, you have almost three minutes. Thank you, Your Honor. I believe, at a minimum, whether it's, as I said, Pomponio, I believe he pronounced it differently, that willful neglect, however, under whatever, requires a showing, some evidence of the knowledge of the law. That's totally lacking in the record. These are not, the numbers that he put down on the tax return are not numbers that he could not substantiate to some degree with some retort. These are not, when he said the mortgage interest rate, the number he put down was the sum of the mortgage interest from the mortgage loan and also the interest from the loan he took out for the down payment. How about the charitable contributions? The charitable contributions, those were, I think, he had the numbers, as he said, testified to when he filled these out. When he subsequently had to produce them, he was unable to because, as I said, the chaos going on in his home. He had boxes and boxes, over 300 and some boxes in his garage in which these were found. And I noticed we put into evidence the document that showed that he lost 10 boxes of self-packed, valued all 10 boxes at $55. That's $5.50 a box. That sounds like receipts to me. And this was something that was not created after the fact. It was created contemporaneously with the events. What do you, I'm sorry, go ahead. Well, it's reasonable to think this was not, he was not saying that, well, this box where I claimed $400 for lost goods was where my receipts were. So these, it fits in, it's reasonable that this is to be short of something which sounds wholly made up, phony documents, things which are patently and demonstrably false. There are none of that, there's none of that evidence in here. What do you say to Mr. Poirier's reference to the rental expenses and the finding with respect to that issue at least, as the administrative judge said, that the appellant overstated rental expenses to which he knew he was not entitled? It sounds like willfulness. There was no proof that he knew exactly what the law is. The agency stated that. So your position on that is not a mistake of, not an erroneous standard. It wasn't proven that he had knowledge of the law. That's the burden, that's the evidentiary standard. They have to prove that he knew the law of which he's in a known violation. They didn't show that he knew the law. It's all presumed. Very much like what just occurred here when he said you get a, TurboTax provides a prompt. Well, there was no evidence of that. They didn't do a PowerPoint demonstration at the hearing to show how TurboTax works. And as we knew that this was going, we would have put on the PowerPoint to show that a prompt does not necessarily say fill this in. All it is, it just presents the form. Thank you, Mr. Henry. Thank you, Your Honor. Mr. Poirier. The case is submitted. We'll hear argument next in numbers 05-1363 and 05-1461, Conoco against Energy and Environmental.